17

United States District Court
Southern District of Texas
FILED

AUG 24 2001

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GRACIELA CISNEROS, Individually and As Representative of the Estate of FERNANDO CISNEROS, DECEASED<br>Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. B-01-037 |
| BROWNSVILLE MEDICAL CENTER, TENET HEALTHCARE, LTD.<br>Defendants. | § | |

# RESPONSE TO MOTION FOR SUMMARY JUDGMENT FILED BY BROWNSVILLE MEDICAL CENTER / TENET HEALTHCARE, LTD.

TO THE HONORABLE JUDGE OF SAID COURT:

1. **Factual Background**

(a) Plaintiff's husband was a longtime x-ray technician at Brownsville Medical Center ("BMC") and at all relevant times had five dependents. In 1997, said employee increased his optional (supplemental) life insurance benefits to $116,000.00 during the once-a-year "window" established by BMC for coverage changes. By agreement, all of the insured's premiums (life, health, and disability) were to be deducted by BMC from the employee's wages. Such was the usual and customary practice at BMC.

(b) The amount to be deducted from the insured's wages by BMC for the $116,000.00 supplemental life insurance coverage was $5.84 per pay period (Exhibit A).

(c) The insured employee was relatively young, with no family history of lymphatic cancer (a disease, which, however, has been linked to exposure to x-rays).

ClibPDF - www.fastio.com

(d) Defendant's allegation that Plaintiff could not pay the $5.84 premium is inherently open to doubt and contradicted by Plaintiff (See Exhibit "B"), however, even if it were true then it would certainly be unusual that the Deceased did not then elect the "Accelerated Benefit Option" available to terminally ill patients and thereby salvage at least 50% of the $116,000.00 supplemental life insurance benefit. (See Exhibit "C"). Further, Defendant's internal memorandum (Exhibit "D") asks if the Deceased was ever given conversion forms.

2. **ERISA Preemption**

(a) *There was an "ERISA" Plan but its existence is not relevant.*

There is no question that hospital employees like the Deceased, were covered by an employee plan which was itself probably within the intended application of ERISA (see Movant's Exhibit "A"). Under such plan the Deceased had, in 1997, obtained supplemental life insurance coverage in the amount of $116,000.00. However, *the particular claims asserted by Plaintiff* do not "relate to" that ERISA Plan. In *New York State Conference of Blue Cross Blue Shield v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1996) the United States Supreme Court, while repeating the cornerstone principle that ERISA's application is "clearly expansive,"observed that "relate to" cannot be taken to extend to the furthest stretch of its indeterminacy" or else "for all practical purposes preemption would never run its course." The gist of what ERISA preemption has been interpreted to mean is that if there is some direct fiduciary action which is involved and such action is sufficiently well connected to an ERISA plan so that the action affects the plan in a significant way, then

ClibPDF - www.fastio.com

preemption will be found.

(b) *There is no connection to the plan within the meaning of ERISA's "relate to" preemption clause, of Plaintiff's cause of action.*

To demonstrate the preemption issue it is perhaps useful to discuss a range of possible scenarios. First, suppose, as Defendant has itself noted, that Plaintiff herself was a beneficiary of the ERISA plan at BMC. As such, Plaintiff is, in the literal sense of the term, "related to" the ERISA plan. Further suppose, as Defendant also has noted, that Defendant BMC sponsored and administered the plan. Given the the foregoing, then suppose that Plaintiff, an admitted plan beneficiary, breaks her leg when a housekeeping employee of BMC (an admitted plan administrator) runs into Plaintiff with a laundry cart. A negligence suit would obviously, in the technical sense, "involve" an ERISA sponsor and, further, the suit would also "involve" an admitted plan beneficiary. Is the state negligence cause of action therefore preempted? Clearly not, because, first, the plan is not directly affected by the litigation, and, second because the lawsuit will not involve any discretionary action by a plan fiduciary.

Now, on the other hand, suppose that this Plaintiff, covered by health insurance administered by BMC, seeks reimbursement for medical expenses incurred under such insurance plan and the reimbursement is denied by BMC. Would ERISA preempt Plaintiff's state breach of insurance contract cause of action? Clearly, yes, because such cause of action would directly relate to an ERISA covered plan and would question the discretionary act of the plan's administrator, BMC, in denying

ClibPDF - www.fastio.com

payment. That was the situation in *Pilot Life Insurance Co. v. Dedeux*, 481, U.S. 41, (1987) where the Supreme Court emphasized that ERISA was designed to protect participants in employee benefit plans as well as their beneficiaries.

In Plaintiff's instant case, however, Plaintiff does not seek to recover funds from the plan nor does Plaintiff challenge a discretionary decision made by a plan administrator. Instead, Plaintiff sues BMC as an entity that she alleges to have negligently, or wrongfully, neglected to pay policy premiums through wage withholding after the Deceased became totally disabled and had been terminated or neglected to take the appropriate collateral conversion notice steps. As noted, Exhibit "D", an internal BMC document asks, instructively, "did they give him the conversion forms?" If Plaintiff prevails in her lawsuit against BMC the ERISA plan will be unaffected and no decision of a plan administrator, on a plan matter, will be impugned. BMC will, if Plaintiff is successful, as the Deceased's employer, be forced to itself pay damages. No plan beneficiary's benefits will in any way be affected. Instead, BMC will be forced to pay the judgment out of the some $40 million annual profits that BMC realizes.

Plaintiff's case can best be analogized to *Pegram v. Herdrich*, 530 U.S. 211 (2000) where an ERISA plan beneficiary sued an HMO and physician for medical malpractice. The United States Supreme Court unanimously held that the negligence cause of action against the HMO and physician were not preempted. The test of ERISA preemption set out in the unanimous *Pegram* decision was "whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when

ClibPDF - www.fastio.com

taking the action subject to complaint." In Plaintiff Cisneros's case, in failing to withhold and pay life insurance premiums, or in failing to take collateral action, Defendant BMC was not acting for the plan, rather was acting as an employer with certain contractual obligations to an employee. The failure to withhold premiums or give conversion notices are alleged as an employer's error, not a plan administrator's error, and any liability is not a plan liability. When Congress passed ERISA it clearly intended to protect plan assets so as to protect plan beneficiaries. Congress did not intend to allow unrelated wrongful acts of employers, (or HMO physicians as in *Pegram*), to escape liability for non-plan malfeasance. Finally, to the extent that Plaintiff's conclusion concerning ERISA is wrong, her pleadings should be liberally construed as asserting an ERISA cause of action.

3. **Wrongful Death**

STATE WORKERS COMPENSATION ISSUE.

Under the Texas Labor Code, § 408.001(a), in cases of death and grossly negligent or intentional employer torts, beneficiaries are given the right to sue for wrongful death in court to use non workers compensation rights. Accordingly, Plaintiff properly sued in state district court.

WRONGFUL DEATH PER SE.

Plaintiff alleges wrongful death caused by the x-ray exposure of Plaintiff's deceased husband. Such death was the alleged result of Defendant's willfully, or grossly negligently, exposing the Deceased to excessive radiation levels. Both state and federal court rules encourage broad form pleading. In both forums, means exist (e.g., special exceptions in state

ClibPDF - www.fastio.com

court, motion for more definite statement in federal court)[1] for Defendant to require a Plaintiff to more precisely plead.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant's Motion for Summary Judgment is denied.

Respectfully Submitted,

DENIS A. DOWNEY
Bar No. 06085500
Federal No. 1186
1185 F.M. 802, Suite 3
Brownsville, Texas 78526-1538
956-544-0561 / 956-544-0562 (FAX)

ATTORNEY FOR PLAINTIFF

[1] Plaintiff's proposed amended complaint addresses this particular issue.

ClibPDF - www.fastio.com

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent this 24 day of August, 2001, via the U.S. Mail, first class, postage prepaid, to the following:

Chris A. Scherer
HAYNES AND BOONE, LLP
112 East Pecan Street, Suite 1600
San Antonio, Texas 78205-1540

Denis A. Downey

ClibPDF - www.fastio.com

| | | Earnings | Hours | Current | YTD Hours | YTD Amount | Deduction | Current | YTD | Deduction | Current | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CISNEROS,, FERNANDO | 21242 | REGULAR | 7.75 | 117550 | 11036 | 1673912 | FICA TAX | 1441 | 172114 | FED TAX | | [illegible]28696 |
| 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 | | OVERTIME | | 50 | | 1068 | CHARITY | 200 | 4080 | EMP LIFE | 384 | 11388 |
| 003597312 | 6946 | SHIFT1 | | 700 | | 700 | SP LIFE | 252 | 5048 | SP AD&D | 58 | 1160 |
| 7140.00 5 | 19259 | INCV BNS | | | | 150000 | EMP AD&D | 40 | 800 | CHD LIFE | 84 | 1680 |
| 14.240019 | | CPIIRS | 1063 | 27938 | | | CHD AD&D | 07 | 140 | 401KLOAN | 3463 | 69260 |
| A 07-10-89 | 2206089 | TENRESSK | | 8100 | | 115344 | INC REPL | 597 | 11940 | | | |
| | | [illegible] | | | 15137 | 397837 | | | | | | |
| | | MEDICAL | | | 3175- | 63500- | | | | | | |
| | | DENTAL | | | 1275- | 25500- | | | | | | |
| | | 401K | | | 523- | 43772- | | | | | | |

Last day Employment
09/26/98

**TRA 000174**

Cisneros v. Brownsville Med, et al

STATE OF TEXAS §

COUNTY OF CAMERON §

# AFFIDAVIT OF GRACIELA CISNEROS

1. My name is Graciela Cisneros;

2. I am over the age of 18 years and qualified to make this affidavit;

3. The facts stated herein are within my personal knowledge and are true and correct;

4. My late husband, Fernando Cisneros, obtained supplemental life insurance in the amount of $116,000.00. He did so because we felt it was needed in light of the size and ages of our children;

5. Shortly after applying for the life insurance increase my husband received confirmation of the supplemental life insurance coverage he had applied for. Such coverage was to be withheld from my husband's wages at Brownsville Medical Center ("BMC");

6. At no time was I, nor my husband, ever told that premiums on the $116,000.00 life insurance policy had not been paid by BMC or otherwise, or advised of any steps necessary to keep the supplemental insurance from lapsing after my husband, in November of 1998, was let go by BMC;

7. At all relevant times we were well able to pay the $5.84 per pay period premium on such supplemental insurance;

8. Before October of 1998 my husband was aware that his health condition was critical;

9. My husband died in BMC and at that time a hospital administrator told me, in response to my concern about not being able to pay for funeral expenses, that my husband had a lot of insurance. When I was eventually given a check at BMC it was, however, only for $29,000.00.

FURTHER AFFIANT SAYETH NAUGHT.

Dated: August 23, 2001

ClibPDF - www.fastio.com



Graciela Cisneros, Affiant

STATE OF TEXAS §

COUNTY OF CAMERON §

This instrument was acknowledged before me on the 23rd day of August, 2001 by GRACIELA CISNEROS.

Notary Public, State of Texas
My Commission Expires: 01 / 24 / 05

B-2

ClibPDF - www.fastio.com

## *Spouse Life Insurance*

Life Insurance options for your spouse depend on your benefits age at the time your PEF is printed as follows:

| If your benefits age is less than 65... | If your benefits age is greater than 65... | If your benefits age is 70 or greater... |
|---|---|---|
| $5,000 | $3,250 | $2,500 |
| $10,000 | $6,500 | $5,000 |
| $25,000 | $16,250 | $12,500 |
| $50,000 | $32,500 | $25,000 |
| $100,000* | $65,000 | $50,000 |

* *After 1/1/98, requires EOI.*

The maximum Supplemental Spouse Life coverage cannot exceed 50% of the Supplemental Employee Life coverage in effect. Your spouse's enrollment or coverage amount may be subject to EOI approval. See pages 10-11 for information on EOI requirements.

## *Child Life Insurance*

You can elect $5,000 or $10,000 in coverage for each of your eligible children. Your election will cover all eligible children. Your Child Life coverage cannot individually exceed 50% of Supplemental Employee Life coverage in effect.

# Accelerated Benefit Option

The TenetSelect Life Insurance Plans also offer an accelerated death benefit payment option for covered individuals who have a terminal illness or condition. For purposes of this plan, terminal illness or condition is defined as an illness or condition that, in the best medical judgment, is expected to result in death within 12 months.

TRA 000081
Cisneros v. Brownsville Med. et al



This accelerated benefit pays the lesser of $150,000 or 50% of a covered person's Basic and Supplemental Life Insurance coverage amount, and there are no restrictions as to how the money is used.

Accelerated benefits are paid to the terminally ill individual. However, accelerated benefits for a terminally ill child are paid to you. The remaining insurance amount is payable to the individual's beneficiary after death occurs.

There is a $100 administrative fee associated with this payment option. In addition, because this accelerated payment is considered an advance on the insured person's eventual death benefit, you will be required to pay 12 months' interest on the amount paid, at an 8% interest rate. These costs will be deducted automatically from the accelerated benefit payment.

According to tax legislation, a portion or all of your accelerated benefit received after 1996 may be tax-free. Note, however, since this benefit may be considered income, eligibility for government-sponsored health plans may be affected by receiving an accelerated death benefit. We recommend that you consult a tax advisor before electing this payment option.

## What's Not Covered By Life Insurance (Limitations And Exclusions)

The TenetSelect Life Insurance Plans will not pay full benefits if you (or your insured dependent) die as a result of a self-inflicted injury or attempted suicide within two years of the effective date of coverage. This limitation affects an individual's entire coverage amount for the first two years he or she is insured.

For an individual who is already covered and has increased coverage, this limitation only affects the portion of the coverage amount that has been in effect for less than two years (i.e., the increase). For example, if your spouse had $5,000 in Spouse Life Insurance coverage for three years and then increased coverage to the $25,000 coverage level, $20,000 of the $25,000 coverage amount would be affected by this limitation for the first two years following the effective date of the increase.

TRA 000082
Cisneros v. Brownsville Med. et al

ClibPDF - www.fastio.com

13

Virginia

do we know why he was not paying Premi. did they give him the conversion forms.

in 1997 he had 58,000 to increase he would have to had answered EOI did he complete one

I think he was Dx with Cancer & then took the max coverage.

[illegible] 5/11/99

TRA 000160
Cisneros v. Brownsville Med, et al

ClibPDF - www.fastio.com

